## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **PAUL FREDERICK CHANTAL, III,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **No. 2:16-cv-00575-JDL** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant** ) | |

## RECOMMENDED DECISION ON MOTION FOR REMAND
## AND STATEMENT OF ERRORS

The plaintiff challenges an administrative law judge's ("ALJ's) denial of his applications

for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits,

seeking remand of his SSI claim on the basis of the submission of new evidence that he argues is

material to the denial of that claim, *see* Contested Motion for Sentence Six Remand ("Motion for

Remand") (ECF No. 16) at 1-2, and remand of both claims on the basis that the ALJ erred in

multiple respects in denying them on the record before him, *see* Plaintiff's Itemized Statement of

Specific Errors ("Statement of Errors") (ECF No. 10) at 2-19.  For the reasons that follow, I

conclude that the new evidence is not material to the denial of the plaintiff's SSI claim and that

the ALJ committed no error in denying both his SSD and SSI claims.  Hence, I recommend that

the court deny the Motion for Remand and affirm the commissioner's decision.

### I.   The ALJ's Decision

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520,

416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ

found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

Act through September 30, 2005, Finding 1, Record at 23; that he had a severe impairment of

antisocial personality disorder, Finding 3, *id.*; that he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional impairments: he could on a sustained, competitive basis (i) understand and remember simple instructions, (ii) use judgment in making simple work-related decisions, (iii) respond appropriately to supervisors, co-workers, and usual work situations not involving the public, and (iv) adapt to changes in the ordinary work setting, Finding 5, *id.* at 27; that, considering his age (49 years old, defined as a younger individual, on his alleged disability onset date, June 1, 2003, and 62 years old, defined as an individual closely approaching retirement age, on the date of the decision, September 9, 2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 35; and that he, therefore, had not been disabled from June 1, 2003, through the date of the decision, Finding 11, *id.* The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

## II. Motion for Sentence Six Remand

### A. Applicable Legal Standards

Sentence six of 42 U.S.C. § 405(g) provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).

Typically, a request for a sentence six remand concerns "new evidence . . . tendered after the ALJ decision." *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir. 2001) (citation and internal quotation

marks omitted).  Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings.  *See, e.g*., *Seavey v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Freeman v. Barnhart,* 274 F.3d 606, 610 (1st Cir. 2001).

On a cautionary level, the First Circuit has observed that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided — to the end that the process not bog down and unduly impede the timely resolution of social security appeals."  *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir. 1987). Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is new and "material," as in "necessary to develop the facts of the case fully[.]" *Id.* at 139.

New evidence of an infirmity or impairment is not automatically material.  The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing, *see id*.; in other words, that the earlier decision "might reasonably have been different" had the evidence been considered by the commissioner, *id.* at 140 (citation and internal quotation marks omitted).  There is a temporal concern, as well.  The evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied[,]" as opposed to the development of a new disability.  *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988).

## B.  Discussion

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms[,]" Social

Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2017) ("SSR 96-7p"), at 132; *see also* 20 C.F.R. § 416.908. A plaintiff's own reports to medical providers do not establish the existence of a medically determinable impairment. *See* 20 C.F.R. § 416.928(a); *Harthorne v. Astrue*, Civil No. 08-120-B-W, 2008 WL 4937806, at \*7 (D. Me. Nov. 16, 2008) (rec. dec., *aff'd* Dec. 8, 2008).

The ALJ made no allowance for the plaintiff's alleged left shoulder, neck, and arm pain, low back pain, or right side and right hip pain, finding that he had failed to demonstrate the existence of any medically determinable impairment to which those symptoms could be attributed. *See* Record at 24. He further noted that the plaintiff took no medication, had never undergone any other courses of conservative treatment for his pain, including physical therapy, steroid injections, and osteopathic manipulative treatment, and had never been referred for or undergone any imaging studies. *See id*. at 25. He added that, but for the findings of examining physician Frank A. Graf, M.D., in January 2015, findings on physical examination had been unremarkable. *See id*. He observed that the fact that Dr. Graf suspected that the plaintiff had bilateral rotator cuff arthropathy and cervical and thoracic degenerative disc disease did not suffice to support a diagnosis of those conditions. *See id*.[1]

The plaintiff asserts that a Sentence Six remand is warranted because, on April 19, 2017, the commissioner deemed him disabled retroactive to December 12, 2016, the date of a subsequent application for SSI benefits, after obtaining a series of x-rays on March 29, 2017, that the plaintiff contends substantiate his prior complaints of physical pain. *See* Motion for Remand at 3; Attachs.

---

[1] Dr. Graf concluded that the plaintiff "has likely rotator cuff arthropathy at both shoulders" and that "[t]here is clinical evidence in this examination for degenerative disc disease [of the] cervical and thoracolumbar spine without radiculopathy or peripheral nerve changes in the upper or lower extremities but with cervical and lumbosacral pain also limiting motion and movement." Record at 708.

A (ECF No. 16-1) & D (ECF No. 16-5) thereto. For the reasons that follow, I conclude that the plaintiff fails to demonstrate that the March 2017 x-rays relate to his condition on or before September 9, 2015, the date of the earlier adverse decision, or are otherwise material in the sense that the earlier decision might reasonably have been different had this evidence been considered by the ALJ.

The commissioner deemed the plaintiff disabled effective December 12, 2016, pursuant to section 202.04 of Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid"), which directs a finding of disability for individuals who are limited to a maximum sustained work capacity of light work, are of advanced age (55 and over), are high school graduates or more but do not have an education providing for direct entry into skilled work, and have either unskilled or no previous work experience. *See* Attach. C-2 (ECF No. 16-4) to Motion for Remand at Page ID # 868; Grid §§ 200.00(f), 202.04.

As the commissioner observes, *see* Defendant's Opposition to Plaintiff's Motion To Remand Under Sentence Six ("Remand Opposition") (ECF No. 18) at 3 & n.1, the plaintiff was found to be limited to light work because agency nonexamining consultant Archibald Green, D.O., opined that he was capable of lifting and/or carrying only up to 20 pounds occasionally and 10 pounds frequently during an eight-hour workday, *see* Attach. C-2 at Page ID # 862; 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.").[2]

---

[2] As the commissioner notes, *see* Remand Opposition at 3 & n.1, the limitation to light work was material in that, had the plaintiff been found capable of performing medium work, the Grid would have directed a finding of non-disability, *see* Grid § 203.15.

In turn, as the commissioner points out, *see* Remand Opposition at 4, Dr. Green attributed the plaintiff's lifting limitation solely to shoulder dysfunction, *see* Attach. C-2 at Page ID # 862. Yet, no x-ray or other imaging study was done of the plaintiff's shoulders: the March 29, 2017, x-rays were of his lumbar spine, thoracic spine, cervical spine, and bilateral hips/pelvis. *See* Attach. D. Instead, Dr. Green apparently relied on the findings of agency examining consultant Ira W. Stockwell, D.O., who issued a report dated February 24, 2017, describing the following findings on examination of the plaintiff's shoulders:

> When asked to abduct his shoulders, [the plaintiff] could get them to about 90 degrees and no further when a normal person could do a 180-degree arc. He <u>could not perform the Apley scratch maneuver</u>. The Neer test in both shoulders was slightly positive. The apprehension test, however, was performed and was weakly positive. He did have some pain. His shoulder exam was definitely abnormal and showed dysfunction. There may have been some degree of symptom magnification, however, but it would appear that he has significant most likely rotator cuff disease of the shoulders, giving him a positive Neer and Hawkins test bilaterally. The hand grip bilaterally was markedly decreased at 1/5 and I question his effort and symptom magnification.

Attach. E (ECF No. 16-6) to Motion for Remand at Page ID # 881 (emphasis in original).

While Dr. Stockwell noted that the plaintiff had "been examined by Dr. Frank [an apparent reference to Dr. Graf], an orthopedic surgeon, at the behest of a lawyer . . . not too long ago and ha[d] been diagnosed with significant rotator cuff disease and shoulder dysfunction[,]" he did not, himself, purport to diagnose a particular shoulder condition. *Id*. at Page ID ## 878-83.

As a threshold matter, it is doubtful that, if the ALJ had the benefit of review of the 2017 Stockwell opinion, he would have revised his opinion that there was no medically determinable shoulder impairment. Dr. Stockwell made no independent diagnosis, and the ALJ had previously considered Dr. Graf's findings and rejected them as inadequate to demonstrate such an impairment. *See* Record at 33.

In any event, even assuming *arguendo* that the new evidence would have sufficed to demonstrate the existence of a medically determinable shoulder impairment, the plaintiff fails to show that it relates to his condition on or before September 9, 2015. He argues generally that because he is an older person, now 64 years old, "it is likely his physical problems are long standing[.]" Motion for Remand at 5. Yet, as the commissioner rejoins, *see* Remand Opposition at 6-7, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the individual had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights)[,]" Social Security Ruling 96-8p ("SSR 96-8p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 144.

Moreover, the plaintiff's shoulder condition seemingly worsened during the interim between July 10, 2013, when Dr. Stockwell examined him in connection with the adverse decision at issue, and February 24, 2017, when he examined him in connection with his December 12, 2016, SSI claim. In 2013, Dr. Stockwell's findings on examination of the plaintiff's left shoulder (the only shoulder with respect to which the plaintiff then reported pain) were relatively benign:

> He exhibits a slight decreased range of motion, but he is not consistent with this when I examined him as the first time I examined his shoulder dysfunction there was a slight decrease, but he could abduct[] his left arm practically all the way when compared with his right without any major difficulty.

Record at 660. This calls into question the relevance of the 2017 Stockwell findings to any assessment of the plaintiff's shoulder condition on or before September 9, 2015.

Turning to the x-rays, the plaintiff contends that their existence alone warrants a Sentence Six remand because they document medically determinable physical impairments, and the lack thereof was a key basis on which the ALJ found that he had no such impairments. *See* Motion for Remand at 2-3; Reply to Opposition to Motion for Sentence Six Remand ("Remand Reply") (ECF

No. 19) at 3, 7.  He reasons that, accordingly, this is a rare case in which Sentence Six remand is warranted to determine whether, based on his now-documented physical impairments alone, or his combination of physical and previously acknowledged mental impairment, he was disabled as of September 9, 2015.  *See* Motion for Remand at 5-6; Remand Reply at 3, 7.

The commissioner rejoins that the mere existence of the x-ray reports fails to demonstrate that remand is warranted, asserting that the plaintiff has failed to show, and the x-rays on their face do not otherwise make plain, that they substantiate his pain complaints on and prior to September 9, 2015.  *See* Remand Opposition at 3-5.  The plaintiff takes issue with the commissioner's characterizations of the substance of the x-rays, asserting that the arguments of lawyers concerning their significance are irrelevant and, in any event, a layperson reasonably could read them to substantiate the findings on examination of Dr. Graf in 2015 and Dr. Stockwell in both 2013 and 2017.  *See* Remand Reply at 6-7.

The commissioner has the better argument.

*First*, as discussed above, it is clear that (i) the plaintiff was limited to light work based on his diminished lifting/carrying capacity, (ii) the source of the diminishment was his shoulder dysfunction, and (iii) no x-rays were taken of the plaintiff's shoulders.  Thus, the x-rays are irrelevant to the commissioner's 2017 finding that the plaintiff was limited to light work.

*Second*, the plaintiff offers no medical opinion that the spinal and pelvic x-rays taken in March 2017 relate to his condition on or before September 2015.  As discussed above, the mere fact that a person is of advanced age does not suffice to assume the existence of a medical condition.

*Third*, even if the court were to infer that the x-rays do relate to the relevant time period, given the plaintiff's complaints at that time of back, hip, and neck pain and his advanced age, the

plaintiff points to no medical evidence that the x-rays indicate that he was materially more limited through September 9, 2015, than found by the ALJ. The plaintiff's argument to the contrary notwithstanding, *see id.*, nothing about the x-ray findings on their face makes clear to a layperson that they substantiate the physical restrictions claimed by the plaintiff or found by either Dr. Stockwell or Dr. Graf during the relevant period, *see generally* Attach. D.[3]

*Finally*, the ALJ offered additional reasons besides a lack of imaging studies for discounting the plaintiff's complaints of pain in his left shoulder, neck, arms, low back, right side, and right hip, including his minimal treatment and unremarkable findings on physical examination, other than that of Dr. Graf in January 2015. *See* Record at 25. The plaintiff takes issue with the ALJ's failure to consider his poverty or his incarcerations in focusing on his lack of treatment or to give greater weight to his explanation that he declined to take even over-the-counter pain medication to preserve his hard-fought sobriety. *See* Motion for Remand at 3-4. However, as the commissioner notes, *see* Remand Opposition at 7, the plaintiff did not challenge the ALJ's decision on those bases in his earlier-filed statement of errors, *see generally* Statement of Errors, thereby waiving that point, *see, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).[4]

---

[3] Notably, while Dr. Green did find two severe physical impairments, (i) dysfunction – major joints and (ii) spine disorders, *see* Attach. C-1 (ECF No. 16-3) to Motion for Remand at Page ID # 859, he did not explicitly attribute any of his assessed limitations to the x-ray findings, *see* Attach. C-2 at Page ID ## 862-64, and he described the lumbar spine and cervical spine x-rays as revealing mild or minimal disease and the hip x-rays as negative, *see id.* at Page ID # 864.

[4] In any event, as the commissioner argues in the alternative, *see* Remand Opposition at 7-8, the belated challenge is without merit. The plaintiff points to no allegation made to the ALJ that he could not afford treatment. *See* Motion for Remand at 3-4. The ALJ did not err in considering the plaintiff's explanation that he avoided pain medication in

For all of these reasons, the plaintiff fails to meet his burden of demonstrating that the 2015 decision might reasonably have been different if the ALJ had the new x-ray evidence. Accordingly, I recommend that the Motion for Remand be denied.[5]

### III. Statement of Errors

### A. Applicable Legal Standard

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

---

light of his polysubstance abuse history inadequate to explain his avoidance of over-the-counter pain medication. *See* Record at 25. Finally, the plaintiff does not explain how his time in jail excused minimal treatment. *See* Motion for Remand at 4. As the commissioner points out, *see* Remand Opposition at 8-9, the record contains evidence that the plaintiff obtained medical treatment while jailed, *see, e.g.*, Record at 485-87, 605-10.

[5] At oral argument, the plaintiff's counsel cited *Martin v. Barnhart*, Civil Action No. 5:05-00947, 2008 WL 1913882 (S.D. W. Va. Apr. 28, 2008), and *Brennan v. Barnhart*, No. 05-123-P-H, 2006 WL 217987 (D. Me. Jan. 25, 2006) (rec. dec., *aff'd* Feb. 6, 2006), as examples of cases in which a Sentence Six remand was granted. *Martin* is distinguishable in that, there, the court granted a Sentence Six remand based on the fact that, through the grant of a later application for benefits, the claimant was found disabled only one day after he had previously been determined not to be disabled. *See Martin*, 2008 WL 1913882, at *4, *8. *Brennan* is distinguishable in that, there, this court deemed the Appeals Council egregiously mistaken in concluding that new information not before the ALJ did not relate to the relevant time period when some of that information pointedly touched on the claimant's condition as of that time. *See Brennan*, 2006 WL 217987, at *1-*2.

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## B. Discussion

The plaintiff raises 10 points of error that the commissioner helpfully groups under three broad headings: challenges to the ALJ's residual functional capacity ("RFC") determination, challenges to his Step 5 finding that the plaintiff was capable of performing other work, and the asserted denial of a fair hearing based on his alleged bias. *See* Statement of Errors at 2-18; Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("SOE Opposition") (ECF No. 14) at 2. For the reasons that follow, I find no error.

### 1. Challenges to RFC Determination

#### a. Physical RFC

The ALJ found that the plaintiff had no severe medically determinable physical impairment, *see* Finding 3, Record at 23-26, according great weight to the August 6, 2013, opinion of agency nonexamining consultant Donald Trumbull, M.D., and the February 28, 2014, opinion of agency nonexamining consultant J.H. Hall, M.D., *see id*. at 31, 110-12, 140-41, some weight to the July 10, 2013, opinion of agency examining consultant Dr. Stockwell, *see id*. at 32-33, 660-63, and no weight to the January 21, 2015, opinions of examining physician Dr. Graf, *see id*. at 33, 706-13.

The plaintiff contends that the ALJ erroneously rejected or minimized the findings of the only two physicians who examined him, Drs. Stockwell and Graf, asserting that Dr. Stockwell deemed him limited to lifting no more than 10 pounds and, thus, capable of performing no more than sedentary work, and Dr. Graf found him even more limited. *See* Statement of Errors at 6.

He argues that the ALJ violated the "examining doctor rule," 20 C.F.R. §§ 404.1527(c)(1) and 416.927(c)(1), in according greater weight to the opinions of nonexamining experts who had not reviewed all of the medical records than to those of examining experts. *See id.* at 6-7, 11; 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

However, he reads too much into the regulations on which he relies. As the commissioner notes, *see* SOE Opposition at 4-5, this court has rejected the argument that there is such a rule, explaining:

> While it is true, as a general proposition, that opinions of examining sources are entitled to more weight than those of non-examining sources, this is but one of several factors relevant to the evaluation of a medical source's opinion, and an [ALJ] is entitled – indeed, directed – to resolve conflicts in the medical evidence. A blanket rule such as that posited by the plaintiff [that ALJs are required to give more weight to the opinions of examining than nonexamining physicians] would render the state-agency reviews of a claimant's medical records a pointless exercise. It is also contrary to controlling precedent in this circuit.

*Brown v. Astrue*, No. 2:10-cv-27-DBH, 2010 WL 5261004, at *3 (D. Me. Dec. 16, 2010) (rec. dec., *aff'd* Jan. 4, 2011) (citations omitted).[6]

The plaintiff having failed to show that the ALJ's rejection of the Graf opinion was error, he falls short of demonstrating that the ALJ's reliance on the Trumbull and Hall opinions was undermined by the fact that they did not have the benefit of review of Dr. Graf's materials. *See,*

---

[6] As the commissioner points out, *see* SOE Opposition at 4, the plaintiff fails to address the ALJ's stated rationales for assigning no weight to any lifting restriction found by Dr. Stockwell and no weight to Dr. Graf's opinions, *see* Record at 33; Statement of Errors at 6-7, 11.

*e.g.*, *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (while "there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC[,] [f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ].") (citations omitted).

The plaintiff, accordingly, fails to demonstrate error in the ALJ's decisions to accord more weight to the opinions of Drs. Trumbull and Hall than those of Drs. Stockwell and Graf and, more broadly, to find that the plaintiff had no medically determinable severe physical impairment.

### b. Mental RFC

The ALJ deemed the plaintiff able, on a sustained, competitive basis, to understand and remember simple instructions, use judgment in making simple work-related decisions, respond appropriately to supervisors, co-workers, and usual work situations not involving the public, and adapt to changes in an ordinary work setting. *See* Finding 5, Record at 27.

The plaintiff first complains that, while the ALJ purported to give great weight to the opinions of agency examining consultants Roger Ginn, Ph.D., and Christopher Muncie, Psy.D., he minimized their findings, including Dr. Ginn's finding that, if the plaintiff "was in a work environment where he physically could do the job, he could get along as long as he did not have to deal with a lot of people and the job was rather simple and routine[,]" and Dr. Muncie's finding that the plaintiff's "difficulties within a work setting, primarily interacting with others, are likely due to more enduring traits to his overall character." Statement of Errors at 7; Record at 666, 683.

He further protests that the ALJ misread Dr. Muncie's report when he stated that Dr. Muncie found "no psychological symptoms that would negatively impact functioning." Statement of Errors at 14 (quoting Record at 32). Instead, he asserts, Dr. Muncie found that he had trouble getting along with others but did not have a mood disorder, such as depression, that would impair function. *See id.* He notes that an examining psychiatrist, John L. Newcomb, M.D., deemed his personality disorder disabling, concluding that it met the criteria of Listing 12.08 (Personality Disorders), one of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P. *See id.* at 15; *see also* Record at 688, 704-05. He contends that "[n]o logic can support the ALJ's finding that there is no impairment from this personality disorder that would interfere with work[.]" Statement of Errors at 15.

However, the ALJ did not fail to include restrictions stemming from the plaintiff's personality disorder in assessing his mental RFC. Rather, he gave great weight to the findings of Drs. Ginn and Muncie and adopted the mental RFC opinions of agency nonexamining consultants Brian Stahl, Ph.D., and Leigh Haskell, Ph.D. *See* Record at 31-32. Both Drs. Stahl and Haskell had the benefit of review of the Ginn report and gave it great weight, *see id.* 111-14, 143-46, and Dr. Haskell had the benefit of review of the Muncie report and gave it great weight, *see id.* at 143-46. The ALJ's mental RFC finding, hence, adequately reflects the findings of Drs. Ginn and Muncie.

Nor did the ALJ misread the Muncie opinion. He acknowledged that Dr. Muncie had found that, despite the plaintiff's history of conflict with others, which was consistent with his antisocial personality disorder, "[t]here was no evidence to indicate . . . that [he was] experiencing more prominent signs or symptoms of *a mood or psychiatric disturbance* that would negatively impact his overall functioning." *Id.* at 683 (emphasis added). Yet, the ALJ credited Dr. Muncie's

observation that the plaintiff's primary difficulty in a work setting was interacting with others, *see id*. at 31, and, consistent with the RFC opinions of Drs. Stahl and Haskell, deemed him unable to work with the public, *compare* Finding 5, *id*. at 27 *with id*. at 113, 145-46.

The plaintiff next complains that the ALJ made several factual errors with respect to his ability to get along with others, deeming him close to his sister but ignoring her statement that following instructions caused fights between them, and finding that he had had no assault convictions since 1983 despite his commission of an assault against a fellow worker in a sheltered Salvation Army work program in December 2012 and his refusal to submit to arrest at a Motel 6 in 2007, which he argues is similar to an assault. *See* Statement of Errors at 10.

The ALJ's findings are supported by substantial evidence. The plaintiff reported that he lived with his sister, was "very close" to her, and that she was supportive of his efforts "'to s[t]ay on the right path.'" Record at 611, 620. As the plaintiff acknowledges, his 2012 assault of a coworker did not lead to an assault conviction. *See* Statement of Errors at 10. In any event, the ALJ addressed the altercation, reasoning that it was an isolated incident and noting that the plaintiff's descriptions of the event had varied. *See* Record at 28-29. He did not err in failing to equate the plaintiff's 2007 refusal to submit to arrest with an assault. The record to which the plaintiff points is devoid of detail from which one could conclude that his conduct on that day was tantamount to an assault. *See id.* at 308-09.

The plaintiff also complains that the ALJ erred in failing to consider the combination of his antisocial personality disorder, dull normal intelligence, and multiple physical impairments. *See* Statement of Errors at 13. As discussed above, the ALJ did take into account the effects of his antisocial personality disorder, as found by Drs. Ginn, Muncie, Stahl, and Haskell. He determined that the plaintiff did not have a medically determinable intellectual impairment, *see* Record at 24-

25, and the plaintiff does not challenge his rationale for so finding, *see* Statement of Errors at 13.[7]

Finally, as discussed above, the plaintiff falls short of showing that the ALJ's conclusion that he had no severe medically determinable physical impairment was error.

Remand, accordingly, is unwarranted on the basis of the plaintiff's arguments concerning his mental RFC.

### c. Failure To Call Medical Advisor

The plaintiff finally argues that the ALJ transgressed Social Security Ruling 83-20 ("SSR 83-20") in failing to remand his case for additional testing/examination or call a medical advisor, if he was considering denying his claims. *See id.* at 7, 12-13. He asserts that the ALJ was not free to reject the findings of two examining physicians, Drs. Graf and Newcomb, that he was physically and mentally disabled without relying on the opinion of either an examining doctor or a medical advisor. *See id.* at 12.

As the commissioner points out, *see* SOE Opposition at 12, SSR 83-20 is inapposite because there was no prior finding of disability at the time of the ALJ's decision, *see, e.g., Staples v. Colvin*, No. 2:15-cv-392-DBH, 2016 WL 4146083, at *5 (D. Me. Aug. 3, 2016) (rec. dec., *aff'd* Oct. 6, 2016). Even if the ruling were applicable, it requires that a medical advisor be called to infer onset date of disability only when the medical evidence of date of onset is ambiguous. *See, e.g., Hughes v. Colvin*, No. 2:15-cv-150-JHR, 2016 WL 225688, at *2 (D. Me. Jan. 19, 2016). Here, the record was not ambiguous as to onset date. Rather, the experts sharply disagreed as to the extent of the plaintiff's limitations.

---

[7] The plaintiff elsewhere contends that the ALJ admitted that he had dull normal intelligence but then mostly ignored it, a proposition for which he cites his IQ scores on testing by a prison psychologist in 1988 and Dr. Ginn's 2013 finding that he had low average cognitive capability. *See* Statement of Errors at 9. He adds: "Dull normal intelligence <u>is</u> a medically determinable impairment!!!!" *Id.* (emphasis in original). Yet, he fails to address the ALJ's rationale for concluding, after considering the 1988 IQ scores and 2013 Ginn evaluation report, that he had no medically determinable intellectual impairment. *See* Record at 24-25.

## 2. Challenges to Step 5 Determination

### a. Asserted Error in Categorizing Educational Level

The plaintiff contends that the ALJ erred in categorizing his educational level as "high school or above" rather than "limited." Statement of Errors at 2-5. He argues that the correction of this mistake would entitle him to SSI benefits as a matter of law given his age at the time he applied for SSI benefits (59), limited education, lack of work experience, and severe impairment of antisocial personality disorder. *See id.*; *see also, e.g.*, 20 C.F.R. § 416.962(b) ("If you have a severe, medically determinable impairment(s) . . ., are of advanced age . . ., have a limited education or less . . ., and have no past relevant work experience . . ., we will find you disabled.").

This argument rests on faulty underpinnings. There is no dispute that the plaintiff obtained a General Educational Development ("GED") certification. *See* Statement of Errors at 4. As the commissioner points out, *see* SOE Opposition at 13, a GED certification is considered the equivalent of a high school education for purposes of categorization of a claimant's level of educational achievement, *see, e.g., Rivera-Cuevas v. Astrue*, Civil No. 11-1295 (MEL), 2012 WL 4325820, at *1 n.1 (D.P.R. Sept. 20, 2012) ("Plaintiff completed his GED, which equates to a high school education[.]"); Program Operations Manual System § DI 25015.010(C)(4) (directing adjudicators to "[c]onsider a general educational development (GED) certification as equivalent to a high school education").

### b. Failure To Obtain Vocational Expert's Testimony

At Step 5, the ALJ relied on Grid § 204.00 to find the plaintiff capable of performing other work existing in significant numbers in the national economy. *See* Record at 35. He acknowledged that the plaintiff had nonexertional limitations but found that they had little or no effect on the occupational base of unskilled work at all exertional levels, obviating the need for vocational

expert testimony, a proposition for which he cited *Garcia-Martinez v. Barnhart*, 111 Fed. Appx. 22 (1st Cir. 2004). *See id.*

In *Garcia-Martinez*, an ALJ relied on the Grid to determine that a claimant who had alleged only a mental impairment (depression and anxiety), which limited her to work that "(1) was of a routine, repetitive nature, (2) did not involve undue pressure, and (3) did not involve interactions with the public[,]" was not disabled. *Garcia-Martinez*, 111 Fed. Appx. at 23. The claimant challenged the ALJ's sole reliance on the Grid, asserting that because her only impairment was mental, vocational expert testimony was required. *See id.* The First Circuit disagreed, concluding that "where, as here, a claimant's non-exertional impairment does not significantly interfere with the performance of the full range of unskilled work, the use of the [G]rid as a framework is not error." *Id.* For that proposition, it cited, *inter alia*, Social Security Ruling 85-15 ("SSR 85-15"). *See id.* SSR 85-15, in turn, defines the "basic mental demands of competitive, remunerative, unskilled work" as including "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 347.

The restrictions assessed by the ALJ are similar to those at issue in *Garcia-Martinez* and comport with the basic mental demands of unskilled work as set forth in SSR 85-15. *See* Finding 5, Record at 27.

The plaintiff seeks to distinguish *Garcia-Martinez* on the basis that, there, the claimant alleged only mental impairments, whereas he has alleged a host of physical and mental impairments. *See* Statement of Errors at 7-8. However, the First Circuit in *Garcia-Martinez* focused not on the claimant's allegations but, rather, on whether the ALJ's finding of mental

limitations alone required vocational testimony in addition to or in lieu of the use of the Grid. *See Garcia-Martinez*, 111 Fed. Appx. at 23. In this case, as in *Garcia-Martinez*, the ALJ assessed mental limitations alone.

The plaintiff further argues that the ALJ erred in not calling a vocational expert in view of his limited education and dull normal intelligence, which he suggests imposed limitations undermining reliance on the Grid. *See* Statement of Errors at 8-9. As discussed above, the ALJ did not err in finding that the plaintiff had a high school education, and the plaintiff fails to demonstrate that his finding of no medically determinable intellectual impairment was error.

### c. Failure To Find Disability Based on Physical Problems Alone

The plaintiff finally argues that the ALJ erred in failing to accept the finding of Dr. Stockwell that he was limited to lifting no more than 10 pounds, which he concludes would have placed him at a sedentary exertional level, resulting in a determination of disability pursuant to Grid § 201.01. *See* Statement of Errors at 11-12. However, for the reasons discussed above, he fails to demonstrate that the ALJ erred in rejecting any such lifting limitation.

### 3. Asserted Bias on Part of ALJ

The plaintiff seeks remand on the basis of one final argument that he states he feels is his "strongest": that the ALJ was biased against him based on his criminal history and sociopathic personality disorder, depriving him of a fair hearing. *See* Statement of Errors at 15-18. He asserts that this bias was apparent in the ALJ's "'end run' around the evidence" to deny him benefits and his denial of the plaintiff's request that he recuse himself if he was the same ALJ who denied benefits to the plaintiff's late criminal co-defendant. *Id*. at 15-16.

"A claimant in a Social Security disability proceeding is entitled to a fair, unbiased and impartial hearing, presided over by an unbiased non-partisan trier of fact." *Hendricks v. Sullivan*,

No. 90-0709-CV-W-3, 1992 WL 120383, at *8 (W.D. Mo. Feb. 12, 1992). However, ALJs are presumed to act impartially, and that presumption "can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Bickford v. Barnhart,* No. 05-236-P-S, 2006 WL 2822391, at *5 (D. Me. Sept. 29, 2006) (rec. dec., *aff'd* Oct. 20, 2006). The plaintiff falls well short of meeting this standard.

Error by an ALJ, standing alone, does not evidence bias. In any event, for the reasons discussed above, the plaintiff fails to show error in the ALJ's resolution of the conflicting evidence before him. *See, e.g.*, *Clarke v. Colvin*, No. 2:13-cv-377-GZS, 2015 WL 1206495, at *16 (D. Me. Mar. 17, 2015) ("It is the job of the [ALJ] to weigh the evidence; the fact that he rejects the claimant's position does not equate to bias against the claimant, particularly where, as here, each of the instances of alleged bias described by the plaintiff has already been addressed and rejected in this recommended decision.").

The plaintiff also fails to demonstrate that the ALJ's denial of the request to recuse himself evidenced any bias. By letter dated July 25, 2015, the plaintiff's attorney wrote to the ALJ, stating that the plaintiff was "raising the question as to whether there might be a conflict of interest or some bias due to the fact that he thinks you may have been the [ALJ] who denied the disability case of his late co-defendant." Record at 440. After supplying details regarding that individual, the plaintiff's attorney asked the ALJ to let him or the plaintiff "know if there is any possibility of a conflict of interest or bias due to the fact that [the individual] was a co-defendant and friend and associate of [the plaintiff]." *Id.* The ALJ endorsed the letter on August 4, 2015, the day he indicated he received it, as follows: "Request for recusal is denied. I will adjudicate this claim fairly & consistently with my duty as an ALJ." *Id.*

The plaintiff argues that the ALJ "should have answered this question in the negative if he was not the same ALJ" and should have recused himself if he was. Statement of Errors at 16. However, as the commissioner points out, *see* SOE Opposition at 19, the ALJ's handling of the recusal request comported with relevant regulations, which require that an ALJ consider a request for recusal and decide whether to proceed with a hearing or withdraw, *see* 20 C.F.R. §§ 404.940, 416.1440.[8]

The plaintiff, accordingly, fails to demonstrate that remand is warranted on the basis that the ALJ denied him a fair hearing based on bias.

### IV.  Conclusion

For the foregoing reasons, I recommend that the Motion for Remand be **DENIED** and the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of January, 2018.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[8] In accordance with those regulations, the plaintiff raised his bias argument with the Appeals Council, which specifically acknowledged it but "determined that there was no abuse of discretion and that no other basis exists to grant review in this case."  Record at 2; 20 C.F.R. §§ 404.940, 416.1440.